# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| FRANCES L. SCHAFER, | : | Bankruptcy No. 08-13812DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court is the (1) Motion of the Chapter 13 Trustee to Dismiss (the "Motion") the Chapter 13 case of Frances L. Schafer ("Debtor") and (2) Debtor's request for confirmation of her Amended Chapter 13 Plan (the "Amended Plan"). The Chapter 13 Trustee (the "Trustee") asserts that the Debtor has failed to make Chapter 13 plan payments and the Amended Plan is unconfirmable because its funding is significantly less than what is required to satisfy the proofs of claim filed by her secured creditors. While Deutsch Bank National Trust Co. ("DBNT"), holder of the first mortgage on her residence, filed an objection to confirmation, it did not appear or take a position on the Motion. Because I find that the Debtor has neither demonstrated a present or future ability to make the payments under the Amended Plan, I need not

address whether the Amended Plan is sufficiently funded.[1] Rather dismissal is warranted for "cause" because of Debtor's inability to perform her Amended Plan as she has proposed it.

**BACKGROUND**

On June 11, 2008 Debtor filed this Chapter 13 case.[2] Her Chapter 13 plan filed contemporaneously (the "Plan") provided for 60 monthly payments of $400 to the Trustee and current payments on her first mortgage to DBNT.[3] Debtor made five monthly plan payments of $400 each to the Trustee from July 2008 through November 2008. On January 17, 2009 she filed the Amended Plan proposing payments of $2,000 through January with the $400 monthly payments commencing again in February 2009 for the remaining 53 months of the Plan. Exhibit D-2. The objective of the amendment was to "cure" the default to the Trustee by decreasing the plan funding by the missed payments

---

[1] The Trustee points out that the secured claim of DBNT alone is $44,000 whereas the Amended Plan is funded to pay out a total of $22,000 for DBNT, attorneys' fees and the Trustee's commission. Debtor's counsel argues that until the Truth-in-Lending Act ("TILA") litigation with DBNT filed in state court and removed and now pending in the federal district court is resolved, Exhibit D-2, the amount the DBNT is owed cannot be established. Thus, the Amended Plan provides that it will either then be further amended to reflect a loan modification or a new payment amount. If the Debtor cannot confirm a modified plan "within a reasonable time," the case will be dismissed. Exhibit D-1. As noted, I do not opine on whether such a plan can be confirmed over the Trustee's objection.

[2] This is Debtor's second case. In her prior case, 05-19676, she received a Chapter 7 discharge on November 2, 2005. She is thus not entitled to a discharge in this case.

[3] The original mortgage lender was Decision One which issued two loans, both of which were subsequently sold. The larger went to DBNT and the smaller went to HSBC Mortgage Services. Debtor avers that she has rescinded the mortgage loan, claiming in the TILA litigation illegal lending practices by reason of the unauthorized issuance of two loans. The Plan provided for the payment of the first and larger DBNT loan but not the junior HSBC loan which the Debtor contends is totally unsecured and which is the subject of an adversary proceeding seeking lien avoidance.

and therefore excuse Debtor from making the December and January payments. Debtor acknowledges her failure to make the December and January plan payments as well as her failure to make any current mortgage payments since the inception of this case.

On September 29, 2008 DBNT filed a motion for relief from stay averring missed mortgage payments. Doc. No. 31. It was settled by stipulation (the "Stipulation"), Doc. 39, which was approved by the Court on November 4, 2008. Doc. No. 43. Under the Stipulation, Debtor committed to make current mortgage payments commencing November 1, 2008 of $1,566.95 plus an additional payment of $1,119.63 representing a payout of the mortgage arrears or $2,686.58 monthly. The payments were to be made to Countrywide Home Loans, Inc. ("Countrywide"). While the Stipulation has the expected default clause giving DBNT stay relief ten (10) days after a certificate of default is filed with the Court, I note that no certificate of default has been filed nor stay relief sought notwithstanding Debtor's failure to make any of the stipulated payments.

Debtor is an independent sales representative of a furniture manufacture. She contends that she has fallen victim to the significant downturn in the housing market and concomitant decrease in consumer spending for home furnishings. In addition to receiving monthly social security payments of $1,138, her only source of income is the commissions she earns from the sale of furniture to retail establishments like Raymour & Flanigan and Macy's. She has but one furniture line and is therefore reliant on one manufacturer for all her business revenue. She testified that the manufacturer has not made payments to her for some time but has made a verbal commitment to give her what she is owed "shortly." She could not state, even as an approximation, when or what that sum

would be. She has no knowledge of what orders that she has placed were actually shipped, the condition precedent for her payment. She did say that she expected several thousand dollars soon and was confident that she could make up the December, January and now February Trustee payments though double payments of $800 and that she would be able to pay her first mortgage as well.

An examination of Debtor's monthly business reports, Statement of Financial Affairs and Schedules I and J regrettably indicate that her confidence is misplaced. Under the Amended Plan as proposed by Debtor, she has a monthly obligation of approximately $3,000[4] to maintain this Chapter 13 case without regard to her proposed doubling of Trustee payments to $800. In her monthly reports Debtor reported gross business income at the inception of her case in July of $2,624 and presently in January of $2,378.75. Exhibit T-1. In the intervening months, it fluctuated from a November low of $1,962 to the December high of $2,839. Doc. Nos. 29, 35-37, 48-50.[5] Her Schedule I projects gross business income of $2,150 and social security of $1,138 for a total monthly income of $3,288. Doc. No. 16. Her Statement of Financial Affairs reports gross business

---

[4] This consists of $400 under the Amended Plan and $2,686 under the Stipulation with Bank.

[5] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules).

income for 2007 of $6,500.[6]  Doc. No. 8.  Her expenses on Schedule J aggregate $2,877 but the Schedule does not appear to identify her business expenses.  Doc. No. 17.  On her Schedules I and J, which includes her first mortgage payment, she has excess income of $400 to make her Trustee payments.  Yet it has been established that she is not making any mortgage payments at all, without regard even to the stipulated payments that increased the current amount.

**DISCUSSION**

Section 1307(c) provides that Chapter 13 petitions may be dismissed "for cause."  11 U.S.C. § 1307(c).  A bankruptcy court has considerable discretion in determining whether "cause" exists and whether dismissal is the appropriate remedy.  E.g. In re Orawsky, 387 B.R. 128, 137 and n. 15 (Bankr. E.D. Pa. May 2, 2008) (*citing* cases).  See also In re Henry, 368 B.R. 696, 699 (N.D. Ill. 2007) (same).

In order to secure confirmation of a plan, the debtor must prove that she can make all payments under the plan and comply with the plan.  11 U.S.C. § 1325(a)(6).  This is commonly known as the "feasibility" requirement.  "To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan.  E.g. In re Foley, 2008 WL 5411070 (Bankr. E.D. Pa. 2008) (*citing* cases).  In re Patton, 2007 WL 853742,

---

[6] The same document reflects a $50,000 gross income for 2006, suggesting that the extreme downturn in Debtor's commission income is not a recent problem but one that occurred two years ago.

\*5 (Bankr. E.D. Pa. 2007). Delinquency in plan payments provides further cause for dismissal. In re Wilson, 117 B.R. 714 (Bankr. M.D. Fla.1990) (where a debtor is delinquent on making payments to the plan and the plan cannot be confirmed, dismissal is appropriate). To hold otherwise would be to impose delay on creditors contrary to § 1307(c)(1).

While Debtor testified to the contrary, I find her statement that she will be able to pay the Trustee and DBNT to be purely speculative and unsupported by the financial statements she has filed in this case. Had there been any substance to her view that sales commissions would be forthcoming to allow her to pay these obligations, I would have allowed her some time to realize the income. After all, Debtor has paid the Trustee for five of the seven months she has been in this case. Unfortunately she could not do that and also pay her mortgage. Now she cannot pay either.

Protracting this bankruptcy case makes little sense. Confirmation of the Amended Plan eludes Debtor due to her insufficient income to make the proposed plan payments, which as the Trustee notes funds only half of what is needed to pay the DBNT secured claim. The Amended Plan contemplates a modification of those payments which depending on the outcome of the TILA litigation, may be even further beyond Debtor's reach. There is no rationale for awaiting further missed payments. Since DBNT has the ability to get relief from stay by filing a certificate of default, even that protection is not available in this case.

The consumer mortgage industry is in a state of flux with various remedial programs being introduced at the federal, state and local governmental levels. For example,

the President has given loan modifications a central role in his $75 billion Homeowner Affordability and Stability Plan. www.financialstability.gov. Countrywide, which appears to be the servicer of the DBNT mortgage, has recently reached a settlement with the Attorney General of Pennsylvania wherein it will provide $150 million of mortgage relief and cash assistance to thousands of Pennsylvania residents with loans through Countrywide. www.attorneygeneral.gov.[7] Debtor's relief, if any, is more likely to come from these non-bankruptcy options.

Because there is no legitimate purpose in continuing the chapter 13 case, dismissal or conversion is warranted under section 1307(c). However, since Debtor is not eligible for a discharge and has no unencumbered assets, I will dismiss, not convert, this case. In so ruling, I note that should Debtor's income increase as she hopes or liabilities diminish, particularly if she is successful in the TILA litigation, she is free to return to this forum to further attempt a reorganization.

An Order consistent with the foregoing Memorandum Opinion shall be entered.

DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated: March 9, 2009

---

[7] This may explain Countrywide's restraint in seeking relief from stay to foreclose.